Klaus v Town of Brookhaven
2026 NY Slip Op 03669
June 10, 2026
Appellate Division, Second Department
Dowling
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Lori Klaus, et al., respondents,
v
Town of Brookhaven, appellant.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 10, 2026
2021-05435, (Index No. 606376/19)
Valerie Brathwaite Nelson, J.P.
William G. Ford
Deborah A. Dowling
Elena Goldberg Velazquez, JJ.

Rubin Paterniti Gonzalez Rizzo Kaufman LLP, Garden City, NY (Juan C. Gonzalez of counsel), for appellant.
Ruskin Moscou Faltischek P.C., Uniondale, NY (E. Christopher Murray and Elizabeth Sy of counsel), for respondents.

APPEAL by the defendant, in an action, inter alia, to recover damages for personal injuries, from an order of the Supreme Court (Carmen Victoria St. George, J.), dated June 22, 2021, and entered in Suffolk County. The order, insofar as appealed from, denied that branch of the defendant's motion which was pursuant to CPLR 3211(a) to dismiss the amended complaint.
Dowling, J.

[*1]
OPINION & ORDER
I. Introduction
42 USC § 9658, a federal statute enacted as part of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 USC § 9601 et seq.), as amended by the Superfund Amendments and Reauthorization Act of 1986 (Pub L 99-499, 100 US Stat 1613), provides for preemption of accrual dates established in state statutes of limitations for state toxic tort actions based on exposure to hazardous substances in certain circumstances. In this toxic tort action regarding the alleged emission of hazardous substances from the Brookhaven Landfill (hereinafter the Landfill), we are presented with the issue of whether 42 USC § 9658 applies to preempt the limitations period provided by CPLR 214-c for toxic tort actions commenced in New York based upon exposure to hazardous substances where, as here, the plaintiffs' allegations do not otherwise come within the purview of CERCLA. For the reasons that follow, we conclude that 42 USC § 9658 applies to this action.
II. Relevant Factual and Procedural Background
The defendant, Town of Brookhaven (hereinafter Brookhaven), operates the Landfill, which is within the Brookhaven Waste Management Facility in Suffolk County. The Landfill spans approximately 250 acres and is divided into six cells, the first of which was opened in 1974 and the most recent of which, cell six, was opened in 2003. Although a significant portion of the Landfill has been inactive since 1997, cell six, which consists of approximately 113 acres, remains active and primarily accepts construction and demolition debris and incinerator ash.
Frank P. Long Intermediate School (hereinafter the School) is a public school located approximately one mile from the Landfill. Over the years, students and staff at the School, residents of the neighborhoods surrounding the Landfill, and individuals who otherwise worked at locations near the Landfill, complained of gaseous odors emanating from the Landfill and reported health problems such as headaches, eye irritation, nausea, and asthma that they believed were caused by the Landfill. However, numerous air and water quality tests conducted by the New York State [*2]Department of Health (hereinafter the Department of Health) since the 1990s found no link between the various health problems reported and emissions from the Landfill. For example, the Department of Health visited the Landfill in 1994 and 1998 and found no odor problems at the Landfill. Citizen concern about the Landfill also prompted the Department of Health to investigate incidents of cancer near the Landfill between 1983 and 1992 and again between 1993 and 1996, which found that either the number of newly diagnosed cancer cases were not significant or, in those instances where the number of newly diagnosed cases was significant, there was "no obvious clustering" near the Landfill. Subsequent air chemical tests performed on samples collected from the School in December 2015, June 2016, and May 2017 to analyze the presence of volatile organic compounds showed the presence of hydrogen sulfide in amounts deemed "unremarkable." Those air samples collected from the School's basement and outdoor areas contained volatile organic compounds at levels "above typical"; however, the Department of Health did not conclude that the elevated levels were caused by the Landfill.
Nevertheless, allegedly, in or around July 2018, it was revealed that 38 of 105 staff members at the School had been diagnosed with some form of cancer, as well as a number of former students and residents of communities near the Landfill. Also at that time, in July 2018, the Department of Health announced a cancer research initiative to study "cancer clusters" near environmental facilities in New York, which revealed higher-than-typical rates of cancer in neighborhoods surrounding certain environmental facilities throughout the state. The Landfill was not included in that study.
A. The Instant Action
On April 3, 2019, the plaintiffs, who are current or former employees or students of the School, current or former residents of the communities surrounding the Landfill, or authorized representatives of those persons, commenced this action against Brookhaven to recover damages for negligence, wrongful death, private nuisance, trespass, and strict liability in connection with Brookhaven's operation of the Landfill. The amended complaint alleged, among other things, that Brookhaven caused or allowed dirt, debris, and toxic and noxious substances and odors to emanate from the Landfill, including volatile organic chemicals such as carbon tetrachloride, acetone, benzene, chloromethane, dichlorodifluoromethane, methylene chloride, n-bexone, propylene, and tetrachloroethylene, which invaded the School and other properties in communities surrounding the Landfill. The amended complaint further alleged that extended exposure to the toxic and noxious substances and odors emanating from the Landfill caused the plaintiffs to develop varying cancers, lesions, cysts, tumors, rashes, headaches, asthma, epilepsy, and other conditions, some of which resulted in death. With respect to a majority of the plaintiffs, the amended complaint alleged that their respective causes of action arose on July 6, 2018, the date of the Department of Health's research initiative, on which each plaintiff "accumulated enough information, including technical, scientific, demographic, and medical information, to determine that their injuries were caused by the toxic and noxious substances and odors emanating from the Landfill."
Specifically, the plaintiff Brian Hilliard alleged that he worked at the School for 22 years and that he was diagnosed with leukemia in 2018. The plaintiff Erin Robinson, as natural guardian of M. C., alleged that M. C. attended the School from 2016 to 2018 and that M. C. was diagnosed with cough variant asthma in or around the fall of 2016. The plaintiff Kimberley Levy, on behalf of the Estate of Clovis Campbell (hereinafter Clovis), alleged that Clovis worked at the School for 31 years, beginning around 1971, and that Clovis was diagnosed with ovarian cancer in 2002, which caused her death that same year.
The plaintiff Michael Klaus alleged that he resided near the Landfill, that he attended the School between 2007 and 2009, and that he was diagnosed with rhabdomyosarcoma in 2014, when he was in the tenth grade. The plaintiff Mary Pettit alleged that she worked at the School for 10 years, beginning in 2008, and that during that time she was diagnosed with rheumatoid arthritis and otherwise experienced severe joint pain, headaches, and brain fog. The plaintiff Angela Muller alleged that she worked at the School for 11 years, beginning in 2001, and that she was diagnosed with breast cancer in 2013. The plaintiff Allison Schelin alleged that she worked at the School for 21 years, beginning in or around 1996, and that during that time she experienced chronic headaches and fatigue, hearing loss, dizziness, rashes, and respiratory infections, and was diagnosed with thyroid nodules and liver lesions. The plaintiff Claire Goad alleged that she worked at the School for approximately 20 years, beginning in 1977 or 1981, and that she was diagnosed with breast cancer in 2015. The plaintiff Barbara Levy alleged that she resided near the Landfill for three or four [*3]years, until around 2016, and that she experienced burning in her chest, throat, and eyes, and a metallic taste in her mouth. The plaintiff Theresa Palermo-Robinson alleged that she worked at the School for 38 years, beginning in 1981, that she was diagnosed with lung cancer in 2005, and that she began treatment for thyroid issues in 2015. The plaintiff Gregory V. Chavious, on behalf of the Estate of Mary Therese Tierney Chavious (hereinafter Mary), alleged that Mary worked near the Landfill for 35 years, including at the School for approximately 30 years beginning around 1965 and again in 1974, and that Mary was diagnosed with ovarian cancer in 1996 or 1997, which caused her death in 1998. The plaintiff Mary Zaffarano alleged that she worked at the School for 20 years, beginning in 1998, that she was diagnosed with Hashimoto's disease in or around 2008, and that she has otherwise experienced headaches, runny nose, sinus issues, and nausea. The plaintiff Connie Havens alleged that she worked at the School for 24 years, beginning around 1988, that she began to experience headaches in 1991 and dizziness in 2014, and that she was diagnosed with skin cancer in 2013 and heavy metal poisoning in 2014 or 2015. The plaintiff Theresa Tietjen alleged that she worked at the School for 17 years, beginning around 2001, that she was diagnosed with thyroid cancer in 2016 and allergy-induced asthma in 2018, and that she otherwise experienced eye irritation, headaches, and rashes. The plaintiff Linda George alleged that she worked near the Landfill for 16 years, beginning around 1999, including for a time at the School beginning around 2006, and that she was diagnosed with an autoimmune disease and experienced shortness of breath, fatigue, and muscle pain beginning in 2016 or 2017. The plaintiff Patricia Gallina alleged that she resided near the Landfill, that she worked at the School for 10 years, beginning around 2008, and that she was diagnosed with lupus in 2013, chronic rhinitis in 2015 or 2016, and antiphospholipid syndrome in 2018. The plaintiff William E. Loris, on behalf of the Estate of Trish M. Loris (hereinafter Trish), alleged that Trish worked at the School for four years in the late 1990s and that Trish was diagnosed with lung cancer in 2008, which caused her death that same year. The plaintiff Adele Michelsen, as natural guardian of J. S., alleged that J. S. resided near the Landfill, that J. S. attended the School from 2010 to 2012, and that J. S. was diagnosed with epilepsy in 2012. The plaintiff Margaret Wahlfeld alleged that she worked at the School for 26 years, beginning in 1995, and that she was diagnosed with breast cancer in 2014. The plaintiff Victoria DeRosso alleged that she worked at the School for 24 years, beginning in 1995, and that she was diagnosed with breast cancer in 2006. The plaintiff John F. Quail, on behalf of the Estate of Sharon Quail (hereinafter Sharon), alleged that Sharon worked at the School for 34 years, beginning in 1979, that Sharon was diagnosed with an ovarian cyst in 2006 and breast cancer in 2017, and that Sharon otherwise experienced chronic bronchitis beginning in or around 1998.
In addition, the plaintiffs Lori Klaus, Mark Magnani, Donna Maddalone, Adele Michelsen, and Kimberley Levy each alleged that he or she had resided near the Landfill for extensive periods of time and that offensive odors emanating from the Landfill prevented them from enjoying their properties.
B. Brookhaven's Motion to Dismiss the Amended Complaint
Brookhaven moved, inter alia, pursuant to CPLR 3211(a) to dismiss the amended complaint, on the grounds that it was barred by the statute of limitations and failed to state a cause of action. In support of its motion, Brookhaven argued, among other things, that the action was time-barred pursuant to CPLR 214-c and that the statute of limitations period provided by CPLR 214-c was not preempted by the statute of limitations period for state toxic tort actions provided by 42 USC § 9658 because the Landfill was not an inactive "Superfund" site within the purview of CERCLA. Brookhaven also argued it was otherwise entitled to dismissal of the amended complaint because none of the plaintiffs' notices of claim complied with General Municipal Law § 50-e(2) and the amended complaint did not sufficiently state causes of action to recover damages for trespass, private nuisance, or strict liability.
In an order dated June 22, 2021, the Supreme Court, inter alia, denied that branch of Brookhaven's motion which was pursuant to CPLR 3211(a) to dismiss the amended complaint. The court determined, among other things, that the statute of limitations period for state toxic tort actions provided by 42 USC § 9658 applied to preempt the limitations period provided by CPLR 214-c for this action, that none of the causes of action were time-barred, and that Brookhaven was not otherwise entitled to dismissal of the amended complaint. Brookhaven appeals.
III. Analysis
A. New York's Statute of Limitations for Toxic Torts: CPLR 214-c
"'Generally, an action to recover damages for personal injury or injury to property [*4][in New York] must be commenced within three years of the injury'" (Leogrande v Re-Ko Enters., Ltd., 221 AD3d 882, 882, quoting Sullivan v Keyspan Corp., 155 AD3d 804, 805; see CPLR 214[4], [5]). Where, as here, an action seeks to recover damages for personal injury or injury to property "caused by the latent effects of exposure to any substance or combination of substances, in any form," the three-year period within which to commence the action "shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier" (CPLR 214-c[2]; see Leogrande v Re-Ko Enters., Ltd., 221 AD3d at 882).
Additionally, "[u]nder certain circumstances, CPLR 214-c(4) offers plaintiffs in toxic tort cases an alternative limitations period of one year measured from the date of discovery of the cause of the injury, where discovery of the cause of the injury occurs no later than five years after the discovery of the injury, and the plaintiffs are able to prove that 'technical, scientific or medical knowledge and information sufficient to ascertain the cause of [the] injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized'" (Burger v Union Carbide Corp., 304 AD2d 700, 701 [emphasis added], quoting CPLR 214-c[4]; see Giordano v Market Am., Inc., 15 NY3d 590, 601). "[T]he statute refers to the time when information is sufficient for the technical, medical or scientific community 'to ascertain' the cause of an injury," and not "the time when a reasonable layperson or lawyer could 'ascertain' the cause without consulting an expert" (Giordano v Market Am., Inc., 15 NY3d at 601).
B. CERCLA's Limitations Period for State Actions: 42 USC § 9658
"The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, commonly known as CERCLA, establishes a complex statutory scheme for responding to certain environmental hazards" (Guam v United States, 593 US 310, 312). CERCLA is remedial in nature and is principally designed "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination" (CTS Corp. v Waldburger, 573 US 1, 4 [internal quotation marks omitted]; see Atlantic Richfield Co. v Christian, 590 US 1, 6; Freier v Westinghouse Elec. Corp., 303 F3d 176, 201-202 [2d Cir]). Primarily, CERCLA achieves it purpose by empowering the federal government and the states to address environmental emergencies by initiating comprehensive cleanups of hazardous waste sites using the Hazardous Substance Superfund Trust Fund and by imposing liability for cleanup costs on responsible parties (see Niagara Mohawk Power Corp. v Chevron U.S.A., Inc., 596 F3d 112, 120, 126 [2d Cir]; see also 42 USC § 9607). Thus, CERCLA has been described as applying "primarily to the cleanup of leaking inactive or abandoned sites and to emergency responses to spills" (State of New York v Shore Realty Corp., 759 F2d 1032, 1040 [2d Cir] [internal quotation marks omitted]).
When Congress first enacted CERCLA in 1980, "[t]he Act provided a federal cause of action to recover costs of cleanup from culpable entities but not a federal cause of action for personal injury or property damage" (CTS Corp. v Waldburger, 573 US at 4). "Instead, CERCLA directed preparation of an expert report to determine 'the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment,' including 'barriers to recovery posed by existing statutes of limitations'" (id. at 4-5, quoting 42 USC § 9651[e][1], [3][F]). The resulting 1982 report discussed, among other things, "legal remedies for personal injury, environmental damage and reduction of property value resulting from the spills of hazardous substances and disposal of hazardous wastes for which CERCLA provides cleanup and remedial activities," and proposed changes to state tort law (Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies, Rep of Superfund Section 301[e] Study Group to Congress [hereinafter Study Group Report] at 42, 97th Cong, 2d Sess [Comm Print 1982]). Among other things, noting the long latency periods involved in harm caused by toxic substances, the Study Group Report "recommend[ed] that all states . . . clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause" (id. at 256 [emphasis added]).
Congress responded to the Study Group Report by amending CERCLA in 1986 to add the provision codified in 42 USC § 9658, which is the subject of this appeal. 42 USC § 9658 provides:
"(a) State statutes of limitations for hazardous substance cases
"(1) Exception to State statutes
"In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
"(2) State law generally applicable
"Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.
. . .
"(b) Definitions
. . .
"(2) Applicable limitations period
"The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) [of this section] may be brought.
"(3) Commencement date
"The term 'commencement date' means the date specified in a statute of limitations as the beginning of the applicable limitations period.
"(4) Federally required commencement date
"(A) In general
"Except as provided in subparagraph (B), the term 'federally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) [of this section] were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."
Moreover, "facility," as otherwise defined by CERCLA, includes, among other things, a "landfill" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located" (id. § 9601[9]); "release" includes "emitting, . . . discharging, . . . escaping, [and] leaching" (id. § 9601[22]); and "environment" includes "ambient air" (id. § 9601[8]).
42 USC § 9658 has been deemed a "discovery rule" (CTS Corp. v Waldburger, 573 US at 4), and "does not purport to create an entirely new statute of limitations framework for state toxic tort actions" (Federal Deposit Ins. Corp. v First Horizon Asset Sec., Inc., 821 F3d 372, 377 [2d Cir]; see 42 USC § 9658[a][1]). Instead, the statute provides "a limited '[e]xception to State statutes' [that] applies only if the state statute 'provides a commencement date which is earlier than the federally required commencement date'" (Federal Deposit Ins. Corp. v First Horizon Asset Sec., Inc., 821 F3d at 377-378, quoting 42 USC § 9658[a][1]). Thus, in New York, where suit was not [*5]brought within three years of the discovery-of-injury date as provided by CPLR 214-c(2), the primary effect of 42 USC § 9658 is to allow a plaintiff to bring suit within one year after "the date the plaintiff knew (or reasonably should have known)" the cause of an injury, even if more than five years have elapsed since discovery of the injury (id. § 9658[b][4][A]; see Freier v Westinghouse Elec. Corp., 303 F3d at 211; In re Brookhaven Natl. Lab. Trichloroethylene ["TCE"] Cases, 511 F Supp 3d 374, 382 [ED NY]; see also CPLR 214-c[4]).
C. Effect of 42 USC § 9658 on this Action
This appeal presents the first occasion for this Court to expressly determine whether 42 USC § 9658 can preempt New York's accrual statute for toxic tort actions based upon exposure to hazardous substances where there is no concomitant CERCLA liability (see e.g. Ruffing v Hoechst Celanese, 1 AD3d 339, 340). Federal courts having occasion to address the issue of whether 42 USC § 9658 can preempt state statute of limitations rules in the absence of CERCLA liability have rendered contradictory conclusions. In Blankenship v Consolidation Coal Co. (850 F3d 630 [4th Cir]), a case cited by Brookhaven, the United States Court of Appeals for the Fourth Circuit held that 42 USC § 9658 applies only where the plaintiff is able to assert a CERCLA claim (see Blankenship v Consolidation Coal Co., 850 F3d at 637 ["Parties may not bring a CERCLA claim when they have not stated a basis for recovery of response and remediation costs with respect to a hazardous waste site"]). Blankenship and others which similarly conclude that 42 USC § 9658 does not apply in the absence of CERCLA liability rely primarily on principles of comity that limit federal preemption of state law unless Congress has clearly provided for it (see e.g. Barnes ex rel. Estate of Barnes v Koppers, Inc., 534 F3d 357, 365 [5th Cir] [42 USC § 9658 "operates only where the conditions for CERCLA cleanup are satisfied"]; First United Methodist Church of Hyattsville v United States Gypsum Co., 882 F2d 862 [4th Cir]).
To the contrary, relying on a plain language interpretation of 42 USC § 9658, federal courts in the jurisdiction of the United States Court of Appeals for the Second Circuit have found that "a plaintiff need not assert, nor be in a position to assert, a CERCLA claim in order to take advantage of [42 USC § 9658]" (In re Brookhaven Natl. Lab. Trichloroethylene ["TCE"] Cases, 514 F Supp 3d 546, 550 [ED NY] [internal quotation marks omitted]; see In re Brookhaven Natl. Lab. Trichloroethylene ["TCE"] Cases, 511 F Supp 3d at 382; see also Freier v Westinghouse Elec. Corp., 303 F3d 176). Similarly, in O'Connor v Boeing N. Am., Inc. (311 F3d 1139 [9th Cir]), the United States Court of Appeals for the Ninth Circuit, relying on the plain language of 42 USC § 9658, concluded that it "applies to actions that assert state law claims without an accompanying CERCLA claim" (O'Connor v Boeing N. Am., Inc., 311 F3d at 1149).
This Court is not bound by decisions of intermediate federal courts on questions of federal law, including decisions of the Second Circuit (see Tumminia v Staten Is. Univ. Hosp., 241 AD3d 17, 26). Brookhaven urges this Court to conclude that 42 USC § 9658 does not apply here because the Landfill is not an inactive Superfund site for which a party can be subject to CERCLA liability. Applying well-established rules of statutory interpretation, we find Brookhaven's contentions unpersuasive and conclude that 42 USC § 9568 applies to this action.
"'The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter'" (Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d 142, 147, quoting Good Samaritan Hosp. v Shalala, 508 US 402, 409). "The statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660).
Here, 42 USC § 9658 contains no language limiting its application to state actions involving an environmental hazard that might otherwise be actionable under CERCLA. Rather, the plain language of 42 USC § 9658 expressly provides that it "shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility" (id. § 9658[a][2]). We find that the use of the word "all" in describing such state actions means exactly what it says, and evidences Congress's intent for the limitations period of 42 USC § 9658 to apply in all such state actions regardless of whether the environmental hazard at issue might otherwise be actionable under CERCLA (see Lynch v City of New York, 35 NY3d 517, 523; Esposito v Isaac, 240 AD3d 750, 752; see also O'Connor v Boeing N. Am., Inc., 311 F3d at 1149; In re Brookhaven Natl. Lab. Trichloroethylene ["TCE"] Cases, 514 F Supp 3d at 550). Certainly, had Congress intended for 42 USC § 9658 to apply only in actions brought under state law relating to an environmental hazard that might otherwise be actionable under CERCLA, it would have expressly [*6]said so (see Guam v United States, 593 US 310 [holding that contribution actions under 42 USC § 9613(f)(3)(B) are available only after resolving a CERCLA-specific liability given the plain language of that provision specifically referencing "liability" for "response actions" taken pursuant to CERCLA]).
Therefore, with respect to those plaintiffs in this action who did not bring suit within three years of the discovery of their alleged injuries (see CPLR 214-c[2]), 42 USC § 9658 applies to allow those plaintiffs to bring suit within one year after "the date the plaintiff knew (or reasonably should have known)" the cause of an injury, even if more than five years have elapsed since discovery of the injury (id. § 9658[b][4][A]; see Freier v Westinghouse Elec. Corp., 303 F3d at 211; In re Brookhaven Natl. Lab. Trichloroethylene ["TCE"] Cases, 511 F Supp 3d at 382; see also CPLR 214-c[4]).
D. Determination of Brookaven's CPLR 3211(a) Motion
Having concluded that 42 USC § 9658 applies to this action, we find that Brookhaven failed to establish that any of the plaintiffs' claims were time-barred. "'On a motion to dismiss a complaint pursuant to CPLR 3211(a)(5) on the ground that the statute of limitations has expired, the moving defendant must establish, prima facie, that the time in which to commence the action has expired'" (HSBC Bank USA v Lem, 236 AD3d 762, 763, quoting U.S. Bank N.A. v Bernice 380 Corp., 186 AD3d 1750, 1752). "'If the defendant satisfies this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period'" (Gormley v Marist Bros. of the Schs., Province of the United States of Am., 236 AD3d 868, 869, quoting Islandcap, LLC v Cohen, 230 AD3d 660, 661).
Here, with respect to the plaintiffs Brian Hilliard, Erin Robinson, as natural guardian of M. C., and Kimberley Levy, on behalf of the Estate of Clovis, Brookhaven's submissions demonstrated that these plaintiffs all brought suit within three years of the discovery of their alleged injuries (see CPLR 214-c[2]; Leogrande v Re-Ko Enters., Ltd., 221 AD3d at 882). Thus, Brookhaven failed to establish that this action is time-barred with respect to these plaintiffs (see HSBC Bank USA v Lem, 236 AD3d at 763; Leogrande v Re-Ko Enters., Ltd., 221 AD3d at 882).
With respect to all the remaining plaintiffs, namely, Michael Klaus, Mary Pettit, Angela Muller, Allison Schelin, Claire Goad, Theresa Palermo-Robinson, Gregory V. Chavious, on behalf of the Estate of Mary, Mary Zaffarano, Connie Havens, Theresa Tietjen, Linda George, Patricia Gallina, William E. Loris, on behalf of the Estate of Trish, Adele Michelsen, individually and as natural guardian of J. S., Margaret Wahlfeld, Victoria DeRosso, John F. Quail, on behalf of the Estate of Sharon, Lori Klaus, Mark Magnani, Barbara Levy, Donna Maddalone, and Kimberley Levy, individually, their respective causes of action are timely so long as they were brought within one year after "the date the plaintiff knew (or reasonably should have known)" the cause of the injury (42 USC § 9658[b][4][A]). In determining the date on which the plaintiff knew or reasonably should have known the cause of an injury pursuant to 42 USC § 9658(b)(4)(A), the statute "focuses on knowledge, actual or imputed, not on suspicion. Mere suspicion, whatever its reasonableness, cannot be equated with knowledge" (Freier v Westinghouse Elec. Corp., 303 F3d at 205-206; see O'Connor v Boeing N. Am., Inc., 311 F3d at 1147; Weiss v National Westminster Bank, PLC, 936 F Supp 2d 100, 115 [ED NY]).
Here, Brookhaven failed to establish, prima facie, that these plaintiffs knew or reasonably should have known that the Landfill was the cause of their injuries more than one year before this action was commenced on April 3, 2019 (see 42 USC § 9658[b][4][A]; O'Connor v Boeing N. Am., Inc., 311 F3d at 1147; Freier v Westinghouse Elec. Corp., 303 F3d at 205). Brookhaven's evidence in support of its motion demonstrated that, notwithstanding a history of public suspicion regarding harm caused by the Landfill, investigations by the Department of Health and others repeatedly and consistently concluded that emissions from the Landfill, including the emission of volatile organic compounds, posed no threat, or were otherwise unable to connect the emissions to the plaintiffs' injuries. Under these circumstances, it cannot be concluded that the plaintiffs should have known, beyond mere suspicion, that emissions from the Landfill caused their injuries more than one year before this action was commenced (see O'Connor v Boeing N. Am., Inc., 311 F3d at 1149-1157; Freier v Westinghouse Elec. Corp., 303 F3d at 205).
Accordingly, the Supreme Court properly denied dismissal of the amended complaint pursuant to CPLR 3211(a)(5) as barred by the statute of limitations.
IV. Additional Contentions
Brookhaven also contends, among other things, that the Supreme Court erred in denying dismissal of the amended complaint pursuant to CPLR 3211(a)(7) because the plaintiffs' notices of claim did not comply with General Municipal Law § 50-e(2) and because the amended complaint failed to state causes of action to recover damages for trespass, private nuisance, and strict liability. We reject these contentions.
A notice of claim must contain, inter alia, the nature of the claim; the time when, the place where and the manner in which the claim arose; and the items of damage or injuries claimed to have been sustained so far as then practicable (see id.). "'The requirements of the statute are met when the notice describes the incident with sufficient particularity so as to enable the defendant to conduct a proper investigation thereof and to assess the merits of the claim'" (Garland v City of New York, 237 AD3d 669, 670, quoting Washington v City of New York, 190 AD3d 1009, 1011). "'Nothing more may be required'" (Brown v City of New York, 95 NY2d 389, 393, quoting Schwartz v City of New York, 250 NY 332, 335). Here, contrary to Brookhaven's contention, the notices of claim were sufficiently particular and were not required to specify the contaminant(s) emanating from the Landfill that the plaintiffs believed caused their respective injuries (see Boswell v Leemilt's Petroleum, 252 AD2d 889, 890-891; Matter of Seekings v Jamestown Pub. School Sys., 224 AD2d 942, 943).
Moreover, although permeating odors or vapors are generally insufficient to state a valid cause of action to recover damages for trespass (see Shrage v Con Edison Co., 216 AD3d 1023, 1025), to the extent the amended complaint alleged that debris and particulate from the Landfill infiltrated certain of the plaintiffs' properties, it sufficiently alleged a cause of action to recover damages for trespass (see Del Vecchio v Gangi, 225 AD3d 666, 669; Shrage v Con Edison Co., 216 AD3d at 1025). The amended complaint sufficiently stated a cause of action to recover damages for strict liability (see Doundoulakis v Town of Hempstead, 42 NY2d 440, 448; Nicholson v KeySpan Corp., 65 AD3d 1025, 1026).
In addition, the amended complaint sufficiently alleged a cause of action to recover damages for private nuisance (see Dudley v API Indus., Inc., ___ AD3d ___, 2025 NY Slip Op 07379). Contrary to Brookhaven's contention, "the conclusion that a private nuisance cause of action is restricted only to a relatively few individual property owners is not supported by the law" (Dudley v API Indus., Inc., ___ AD3d at ___, 2025 NY Slip Op 07379, *4).
Brookhaven's remaining contentions are without merit.
V. Conclusion
Accordingly, we affirm the order insofar as appealed from.
BRATHWAITE NELSON, J.P., FORD and GOLDBERG VELAZQUEZ, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court